UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DO DENIM, LLC,

        Plaintiff,

     -v-                             No.  08 Civ. 10947 (LTS)(RLE)

FRIED DENIM, INC.,

        Defendant.

--------------------------------------------------------x

### OPINION AND ORDER

In this action, Plaintiff DO Denim, LLC ("Plaintiff"), brings copyright infringement,

trade dress infringement, trade dress dilution and unfair trade practices claims pursuant to the

Federal Copyright Act of 1976, 17 U.S.C. § 101, et seq. ("Copyright Act"), the Federal Trademark

Act of 1946, 15 U.S.C. § 1051 et seq. ("Lanham Act"), and New York General Business Law §§

349 and 360-l, against Defendant Fried Denim, Inc. ("Defendant"), for Defendant's alleged copying

and use of Plaintiff's original designs on manufactured jeans.  The Court has jurisdiction of

Plaintiff's federal trade dress claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of

the state law claims pursuant to 28 U.S.C. § 1367.  Defendant moves, pursuant to Rule 12(b)(1) of

the Federal Rules of Civil Procedure, to dismiss Plaintiff's copyright claims for lack of subject

matter jurisdiction, and pursuant to Rule 12(b)(6) with respect to the remaining claims for failure to

state a claim.

The Court has considered thoroughly the parties' submissions.  For the following

reasons, Defendant's motion to dismiss the Amended Complaint is granted.

BACKGROUND

The following facts are derived from the allegations in the Amended Complaint, which are construed as true for purposes of Defendant's Rule 12(b)(6) motion, and are undisputed at this stage for purposes of Defendant's Rule 12(b)(1) motion.

Plaintiff is a well-established, lifestyle apparel company that designs, manufactures and markets jeans.  In 2005, Plaintiff created two designs that were to be stitched onto the back pockets of Plaintiff's jeans -- the "Wings Design" and the "Dragon Design."  (Am. Compl. ¶¶ 7-8.) The Wings Design resembles a winged skull, and the Dragon Design, according to Plaintiff, "abstractly resembles a dragon."  (Id. ¶ 13.)  Copies of these designs are appended to the Amended Complaint as Exhibits A and C, respectively.

Plaintiff delivered the deposits, applications, and fees required for registration separately for both the Wings Design and the Dragon Design to the United States Copyright Office ("Copyright Office").  (Am. Compl. ¶¶ 10-12, 15; id. Exs. B, D.)  The Copyright Office has not yet responded to Plaintiff's applications.

The Amended Complaint alleges that the Dragon Design "identifies to consumers that the origin of the product lies with Plaintiff" (Am. Compl. ¶ 18), and that the Dragon Design trade dress "is distinctive and non-functional and has achieved secondary meaning."  (Id. ¶ 24.) Over 500,000 units of the goods featuring the Dragon Design have been sold nationally and internationally, and the sold goods were worth approximately $12 million.  (Id. ¶¶ 21-22.)  Plaintiff has used the Dragon Design since 2005 and has incurred "significant expenses" in advertising the Dragon Design trade dress.  (Id. ¶ 19.)

Defendant produces and sells jeans models using copies of the Wings Design and the Dragon Design.  (Am. Compl. ¶¶ 27, 29; Ex. F.)  Plaintiff claims that Defendant's use of the

Wings Design and Dragon Design infringes Plaintiff's copyrights in the designs, and that

Defendant's use of the Dragon Design also infringes Plaintiff's trade dress rights.


DISCUSSION

*Copyright Claims*

Defendant argues that Plaintiff's copyright claims should be dismissed pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Court lacks subject matter

jurisdiction of those claims.  17 U.S.C. § 411(a) provides, in relevant part:

> no civil action for infringement of the copyright in any United States work shall be
> instituted until preregistration or registration of the copyright claim has been made
> in accordance with this title.  In any case, however, where the deposit, application,
> and fee required for registration have been delivered to the Copyright Office in
> proper form and registration has been refused, the applicant is entitled to institute a
> civil action for infringement if notice thereof, with a copy of the complaint, is served
> on the Register of Copyrights.

17 U.S.C. § 411(a) (West Supp. 2009).  "[S]ection 411(a)'s registration requirement limits a district

court's subject matter jurisdiction to claims arising from registered copyrights only."  In re Literary

Works in Electronic Databases Copyright Litig., 509 F.3d 116, 122 (2d Cir. 2007) (citing Well-

Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 114-15 (2d Cir. 2003); Morris v.

Business Concepts, Inc., 259 F.3d 65, 72, 73 (2d Cir. 2001)).  "Registration" is defined as "a

registration of a claim in the original or the renewed and extended term of copyright."  17 U.S.C. §

101 (West 2005).  It is undisputed that Plaintiff's registration application has not "been refused" by

the Copyright Office within the meaning of the statute.

Defendant argues that, because the Copyright Office has not granted Plaintiff a

certificate of registration, registration has not "been made," and therefore, neither jurisdictional

prerequisite of Section 411(a) has been met.  Plaintiff argues, however, that its filing of the

applications, fees and deposits is sufficient to constitute "registration" being "made" for purposes of the statute, thereby conferring upon the Court subject matter jurisdiction of its copyright claims.[1] Neither party cites controlling Second Circuit authority squarely addressing whether submission of the application, fee and deposit means that registration has "been made," and some circuits are split on the matter.  Compare La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195 (10th Cir. 2005) (noting and discussing split in circuits, but concluding that "the Register of Copyrights must affirmatively determine copyright protection is warranted . . . before registration occurs under the Act.  And only upon registration or refusal to register is a copyright holder entitled to sue for copyright infringement"); with Action Tapes, Inc. v. Mattson, 462 F.3d 1010, 1013 (8th Cir. 2006) ("the copyright owner may not sue for infringement under the federal Copyright Act until the owner has delivered the deposit, application, and fee required for registration to the United States Copyright Office").[2]

---

[1]      Plaintiff does not assert that it has satisfied the "preregistration" requirement of Section 411(a).

[2]      District courts within this circuit have applied differing standards.  Compare Tooker v. Copley, No. 86 Civ. 6210 (JMW), 1987 WL 124315, *2 (S.D.N.Y. Mar. 24, 1987) (mere application for registration insufficient to satisfy registration requirement) with Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002) ("Actual certification by the Copyright Office is not necessary.  A copyright holder may commence an action for infringement as soon as the Copyright Office has received a proper application, fee and deposit.").  Well-Made Toy was affirmed by the Second Circuit, see 354 F.3d 112, but the district court standard was not repeated or explicitly affirmed by the Second Circuit, the parties did not challenge the district court's enunciation of the standard, and there is no indication that any application, fee or deposit had been delivered in connection with the copyright that was held to be unregistered in that case.

The Court has considered thoroughly the cases cited by the parties and finds, for substantially the reasons set forth in the Tenth Circuit's thorough and well-reasoned opinion in La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195 (10th Cir. 2005), that Plaintiff's mere filings of the applications, fees and deposits in connection with the Wings Design and the Dragon Design do not satisfy the jurisdictional prerequisites of Section 411(a) for either design.  The language, "required for registration," as used in the phrase, "the deposit, application, and fee required for registration," suggests strongly that the deposit, application and fee are prerequisites to registration and do not themselves constitute registration.  Moreover, to construe "registration" having "been made" as meaning merely that "the deposit, application and fee have been delivered," without more, would render the subsequent alternative condition -- that the deposit, application and fee be delivered and registration be refused -- superfluous.  The plain language of the statute compels dismissal of Plaintiff's copyright claims for lack of subject matter jurisdiction.

## Lanham Act Trade Dress Infringement and Dilution Claim

Defendant moves for dismissal of Plaintiff's trade dress and unfair competition claims, which are premised solely on Defendant's alleged copying of the Dragon Design, pursuant to Rule 12(b)(6).  In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all factual statements alleged in the complaint and draw reasonable inferences in favor of the non-moving party."  McCarthy v. Dunn & Bradstreet Corp., 483 F.3d 184, 191 (2d Cir. 2007) (internal citations omitted).  While detailed factual allegations are not required, the pleading standard set forth in Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."    Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)).  Moreover, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570 (2007)).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief."  Id. (internal

quotations and citations omitted).  This Twombly standard applies to all civil actions.  Id. at 1953.

Section 43(a) of the Lanham Act protects trade dress.  "A product's trade dress

encompasses the overall design and appearance that make the product identifiable to consumers."

Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114, 119 (2d Cir. 2001).  "A

product's [unregistered] trade dress is protected under the Lanham Act if it is not functional and if

it is either inherently distinctive or has acquired secondary meaning in the marketplace."  Id.

However, with respect to trade dress claims premised on a particular product design (as opposed to,

for example, product packaging), as in this case, the claimant must show that the product design

trade dress has acquired secondary meaning.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101,

114 (2d Cir. 2001) (citing Wal-Mart Stores, Inc. v. Samara Brothers, Inc., 529 U.S. 205, 213-17

(2000)).  A product has acquired secondary meaning when, "'in the minds of the public, the

primary significance of [the mark] is to identify the source of the product rather than the product

itself.'"  Id. (quoting Samara Bros., 529 U.S. at 210-11).[3]

_____

[3]       In addition, Plaintiff must "articulate the design elements that compose the trade
          dress."  Yurman Design, 262 F.3d at 116.  "It is too easy for the question of design

The Lanham Act requires Plaintiff to prove that the unregistered trade dress is not

functional.  See 15 U.S.C. § 1125(a)(3) (West Supp. 2009) ("In a civil action for trade dress

infringement under this chapter for trade dress not registered on the principal register, the person

who asserts trade dress protection has the burden of proving that the matter sought to be protected

is not functional.")  "'A product feature is functional, and cannot serve as a trademark, if it is

essential to the use or purpose of the article or if it affects the cost or quality of the article.'"

Yurman Design, 262 F.3d at 116 (quoting TrafFix Devices, Inc. v. Marketing Displays, Inc., 532

U.S. 23, 32 (2001)).  "And in cases involving an aesthetic feature, the dress is also functional if the

right to use it exclusively would put competitors at a significant non-reputation-related

disadvantage."  Id. (quoting TrafFix, 532 U.S. at 32) (quotations omitted).  "Thus, the

nonfunctionality requirement 'protects competition even at the cost of potential consumer

confusion.'"  Id. (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 379-80

(2d Cir. 1997)).  "The test of nonfunctionality in trade dress claims that are based on product design

is even more critical than in trade dress claims based on packaging, because a monopoly right in the

design of the product itself is more likely to preclude competition."  Id.

Plaintiff must also prove non-functionality when claiming trade dress dilution

pursuant to Section 43(c) of the Lanham Act.  See 15 U.S.C. § 1125(c)(4)(A) (West Supp. 2009)

("In a civil action for trade dress dilution under this chapter for trade dress not registered on the

---

and configuration ('overall look') to degenerate into a question of quality, or beauty,
or cachet.  Thus, the 'focus on the overall look of a product [or products] does not
permit a plaintiff to dispense with an articulation of the specific elements which
comprise its distinct dress.'" Id. (quoting Landscape Forms, Inc. v. Columbia
Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997) (emphasis added)).  "Courts will . . .
be unable to shape narrowly-tailored relief if they do not know what distinctive
combination of ingredients deserves protection." Id. (quoting Landscape Forms, 113
F.3d at 381 (quotations omitted)).

principal register, the person who asserts trade dress protection has the burden of proving that -- (A)

the claimed trade dress, taken as a whole, is not functional and is famous").

The Amended Complaint includes a conclusory assertion that the Dragon Design is

"unique and nonfunctional," but proffers no factual allegations demonstrating that the design is not

aesthetically or otherwise functional.  Although Plaintiff's opposition papers contain various

generalized assertions about the nature of the jeans industry and the extent to which jeans designers

rely on back pocket-embroidered designs that may or may not be similar to the Dragon Design, the

Amended Complaint itself contains no factual allegations as to whether protecting the Dragon

Design in the manner contemplated by Plaintiff would put competitors at a significant non-

reputation-related disadvantage.  Accordingly, Plaintiff's Lanham Act trade dress infringement

claim and Plaintiff's Lanham Act trade dress dilution claim, both of which must satisfy the non-

functionality element, must be dismissed.

*New York General Business Law Section 349*

Plaintiff claims that Defendant's use of the Wings Design and Dragon Design

constitutes unfair and deceptive trade practices, in violation of Section 349 of the New York

General Business Law.  The statute provides, "[d]eceptive acts or practices in the conduct of any

business, trade or commerce . . . are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349 (West

2004).

Corporate competitors may bring a claim under this statute "'so long as some harm

to the public at large is at issue.'"  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d

Cir. 1995) (quoting Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 786 F. Supp. 182, 215

(E.D.N.Y.), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992)).  However, because

"section 349 is modelled after the Federal Trade Commission Act, federal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety." <u>Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.</u>, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) (citing cases). "It is well settled . . . that trademark or trade dress infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." <u>Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.</u>, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. Apr. 15, 2002).[4]  <u>See also</u> <u>Jaret Int'l, Inc. v. Promotion in Motion, Inc.</u>, 826 F. Supp. 69, 78 (E.D.N.Y. 1993) ("Most federal trademark and trade dress infringement claims . . . 'fall outside the original intent of [Section 349].'" (quoting R. Givens, Practice Commentaries on N.Y. Gen. Bus. Law § 349 at 567 (McKinney 1988))).

Plaintiff asserts in its opposition papers that Defendant's use of Plaintiff's designs causes injury to the public because "the consuming public needs to be free from competitive practices that deceive and therefore complicate consumers' purchase decisions." (Opp'n at 7.) This sort of "injury" to the public, however, is no different from the type of "injury" alleged in any

---

[4]     Plaintiff does not explicitly contend that the law is otherwise, but cites <u>Solomon v. Bell Atl. Corp.</u>, 9 A.D.3d 49, 52 (App. Div. 1st Dep't. 2004) for the proposition that a plaintiff need only show that the defendant made "misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances . . . and that as a result the plaintiff suffered injury." Plaintiff's reliance is misplaced, as Plaintiff is a corporate competitor rather than an individual consumer, but also because the court was applying Section 349 specifically to a false advertising claim, not a trade dress infringement claim. <u>See</u> <u>Solomon</u>, 9 A.D.3d at 52 ("Claims under General Business Law §§ 349 and 350 are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising.").

garden variety trade dress infringement claim.  Because nothing more is alleged, and no other sort

of injury to public health or safety can reasonably be inferred from the Amended Complaint,

Plaintiff has failed to state a New York unfair and deceptive trade practices claim.  See, e.g., Sports

Traveler, 1997 WL 137443, at *3 ("Plaintiff alleges that the similarit[ies] . . . [have] misled the

public into believing that the two magazines are one and the same. . . .  Although Plaintiff . . .

claims that the alleged infringement has created consumer confusion, the complaint is devoid of

allegations supporting an inference that the public's health or safety is at stake as a result of the

alleged infringement."); Bristol-Myers, 786 F. Supp. at 215-16 (no harm to public interest where

consumers were allegedly confused between competitor sleep aids, where there was no issue as to

whether either sleep aid contained dangerous ingredients); Securitron, 65 F.3d at 264

(dissemination of false information about competitor lock-maker presented danger to the public in

fire safety situations).


*New York General Business Law Section 360-l*

          Because Plaintiff's federal claims are dismissed, the Court declines to exercise

supplemental jurisdiction of Plaintiff's dilution claim under New York General Business Law

Section 360-l.  See 28 U.S.C. § 1367(c)(3).


*Leave to Replead*

          Plaintiff requests leave to replead any claims dismissed by the Court pursuant to

Rule 12(b)(6).  Plaintiff's request is granted, and Plaintiff's trade dress and state law claims are

accordingly dismissed without prejudice to repleading within the time parameters set forth below.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted.  Plaintiff's copyright claims are dismissed for lack of subject matter jurisdiction, and the remaining aspects of the Amended Complaint are dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), without prejudice to repleading.  No later than 21 days from the entry of this Memorandum Opinion and Order, Plaintiffs may serve and file a Second Amended Complaint.[5]  In the absence of a timely filing of a Second Amended Complaint, the action will be dismissed in its entirety, without prejudice with respect to the copyright claims and with prejudice as to all other claims, and without further advance notice.

The Clerk of Court is respectfully requested to terminate Docket Entry No. 14.

If a Second Amended Complaint is timely filed, the initial pretrial conference in this case will be held on July 30, 2009, at 2:15 p.m.


SO ORDERED.

Dated: New York, New York
       June 17 2009


LAURA TAYLOR SWAIN
United States District Judge

---

[5]      Should a registration certificate be issued or any of Plaintiff's applications be refused by the Copyright Office after a Second Amended Complaint has been filed, Plaintiff may apply separately for leave to amend the complaint to incorporate the appropriate copyright claim.